UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 3:15-CR-27-TAV-DCP |
| | ) |
| COURTNEY NEWMAN, | ) |
| CYNTHIA CLEMONS, and | ) |
| HOLLI WOMACK, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This criminal case is before the Court on defendants' motions for release pending appeal or, alternatively, designation by the Bureau of Prisons [Docs. 990, 997, 1010]. Defendants seek release pending appeal pursuant to 18 U.S.C. §§ 3143(b) and 3145(c), citing their history of compliance while released, the issues they anticipate raising on appeal, the Court's post-verdict order releasing them pending sentencing, and circumstances they contend are exceptional. Alternatively, defendants request that the Court order them released pending designation and allow them the opportunity to self-report. The government has responded [Doc. 992], opposing defendants' request for release pending appeal but not opposing their request to self-report.[1] Because defendants' anticipated appeals do not raise substantial questions of law or fact, defendants may not be

---

[1] The government responded to defendant Newman's motion [Doc. 990] specifically but noted that it "would take the same position concerning any requests Clemons and Womack might make in this regard" [Doc. 922 p. 3].

released pending appeal and the Court will **DENY in part** defendants' motions. The Court will, however, **GRANT in part** defendants' motions in that defendants shall be permitted to self-report to the Bureau of Prisons as set forth herein.

I.    Background

Following their arrests on the charges in this case, defendants Newman, Clemons, and Womack were each released pending trial [Docs. 78, 86, 236]. After an approximately forty-day jury trial, the three were convicted of Count Thirteen of the Fourth Superseding Indictment, charging defendants with opening, using, and maintaining a business, to wit, East Knoxville Healthcare Services ("the Lovell Road clinic"), for the purpose of illegally distributing and dispensing controlled substances outside the scope of professional practice and not for a legitimate medical purpose, in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2 [Doc. 320 p. 63–64; Doc. 860 p. 9–10]. Defendant Clemons was additionally convicted of Count Eleven, which charged the same offense related to Comprehensive Healthcare Systems ("the Lenoir City clinic") [Doc. 320 p. 62; Doc. 860 p. 8–9].

Following the verdict, the Court addressed the issue of defendants' release or detention pending sentencing [*see* Doc. 949 p. 25–51]. Despite having been convicted of mandatory detention crimes, *see* 18 U.S.C. §§ 3143(a)(2), 3142(f)(1)(C), defendants moved for release pending sentencing [*see id.* at 33–36]. The government conceded that defendants were not flight risks and did not pose a danger to the community or others [*Id.* at 27–28, 33] and suggested that there might exist exceptional reasons justifying defendants'

2

release pending sentencing, namely the fact that the nature of defendants' offenses was "so different from th[at] contemplated by the Bail Reform Act" [*Id.* at 26–27, 36–38]. Emphasizing the lack of risk associated with defendants continuing to remain on bond, the Court granted defendants' motions and ordered them released pending sentencing [*Id.* at 41–45].

By all accounts, defendants have complied with the conditions of release pretrial, during trial, and pending sentencing. Defendants now seek to remain on bond pending appeal or, alternatively, to self-report to the Bureau of Prisons.

## II. Analysis

### A. Release Pending Appeal

The Bail Reform Act, specifically section 3143(b)(2), requires that a person be detained pending appeal if that person (1) has been found guilty of a violation of the Controlled Substances Act (21 U.S.C. § 801 *et seq.*) that carries a maximum term of imprisonment of ten (10) years or more, and (2) has been sentenced to a term of imprisonment. 18 U.S.C. §§ 3143(b)(2), 3142(f)(1)(C). Here, defendants were found guilty of knowingly opening, using, or maintaining a business for the purpose of distributing controlled substances [Doc. 860 p. 8–10], an offense for which a maximum term of imprisonment of ten (10) years or more is prescribed in the Controlled Substances Act. 21 U.S.C. § 856(b) (providing that persons convicted of this offense "shall be sentenced to a term of imprisonment of not more than 20 years"). And defendants have

3

each been sentenced to a term of imprisonment. Accordingly, defendants are subject to detention pending appeal pursuant to section 3143(b)(2).

A person subject to detention pursuant to section 3143(b)(2), and who meets the conditions of release set forth in section 3143(b)(1), may, however, "be ordered released, under appropriate conditions, . . . if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c). Each defendant therefore must make two showings to be ordered released under section 3145(c). First, she must show that she meets the conditions of release set forth in section 3143(b)(1). Section 3143(b)(1) establishes two conditions of release: (1) a defendant must show "by clear and convincing evidence that [she] is not likely to flee or pose a danger to the safety of any other person or the community if released on conditions," § 3143(b)(1)(A); and (2) a defendant must show "that the appeal is not for the purpose of delay and raises a substantial question of law or fact" likely to result in reversal, a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence. § 3143(b)(1)(B). And second, she must show that exceptional circumstances make her detention pending appeal inappropriate.

Here, defendants do not satisfy the condition of release in section 3143(b)(1)(B). Specifically, they do not establish that their anticipated appeals raise substantial questions of law or fact. As a result, the Court need not address whether each defendant has shown that she is not likely to flee or pose a danger to the safety of any other person or the

4

community if released on conditions, § 3143(b)(1)(A), or whether exceptional circumstances justify each defendant's release.[2] § 3145(c).

"[A]n appeal raises a substantial question when the appeal presents a close question or one that could go either way and that the question is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *United States v. Pollard*, 778 F.2d 1177, 1182 (6th Cir. 1985) (quoting *United States v. Powell*, 761 F.2d 1227, 1233–34 (8th Cir. 1985)). Section 3143(b)(1)(B) "does not require the district court to find that it committed reversible error" to conclude that an appeal raises a substantial question. *Id.* at 1181–82. Rather, a substantial question is "one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful." *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985); *see also United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985). Thus, to determine whether the question raised on appeal is substantial, "a judge must essentially evaluate the difficulty of the question he previously decided." *United States v. Sutherlin*, 84 F. App'x 630, 631 (6th Cir. 2003) (quoting *United States v. Shoffner*, 791 F.2d 586, 589 (7th Cir. 1986)). The defendant bears the burden of proving the questions raised are substantial. *United States v. Vance*, 851 F.2d 166, 168 (6th Cir. 1988).

---

[2] The Court acknowledges the government's concessions [Doc. 992 p. 2 n.2; *see also* Doc. 949 p. 26–28, 36–38] and the magistrate judge's [Docs. 78, 86, 236], as well as this Court's [Doc. 949 p. 42–43], findings on prior occasions in these regards.

Defendant Newman anticipates that her appeal will raise the issue of the applicability of the *Dunn* exception to the general non-reviewability of inconsistent verdicts and the issue of the sufficiency of the government's evidence with respect to "the maintained element" of a 21 U.S.C. § 856(b) violation [Doc. 990 p. 8–11]. She argues that each is a substantial appellate issue [*Id.*]. Similarly, defendant Clemons states that "[t]he substantial issues to be raised on appeal include, *inter alia*, the arbitrary and irrational jury verdicts as more fully briefed in Mrs. Clemons' motion for a new trial, and comments by the government in closing argument on Mrs. Clemons exercising her constitutional right not to testify at trial" [Doc. 997 p. 2 (citing Doc. 70)]. Defendant Womack concurs that "[s]ubstantial issues have been raised and briefed in post trial filings that present significant legal questions for appeal" [Doc. 1010 p. 3].

The government states that these arguments are based on the same premise underlying defendants' post-trial motions, arguments for reduced drug quantities, and arguments against the application of the abuse-of-trust enhancement—a premise that, the government contends, "this Court has already rejected"—that is, "that the jury absolved her of participating in any drug trafficking activities" [Doc. 992 p. 1 (citing Doc. 951 p. 6–28)]. The government disagrees with defendants' position that the jury's verdict raises new or novel issues for appeal. Rather, the government contends, these issues have been "soundly and unambiguously rejected by the Supreme Court relative to materially indistinguishable fact patterns" [*Id.* at 2].

6

First, with respect to the applicability of the *Dunn* exception, which the Court discusses in more detail in its opinion [Doc. 951 p. 6–13] denying defendants' post-trial motions, the Court does not find that this issue presents a close question. In rejecting defendants' argument that the verdicts in this case were inconsistent and concluding that even if they were, they were not reviewable, the Court relied on clear, controlling Sixth Circuit and Supreme Court precedent [*See id.*]. For this reason, the Court does not find that this issue is "one that could go either way." *Pollard*, 778 F.2d at 1182.

In her motion, defendant Newman suggests that her appeal of this issue is likely to result in reversal or a new trial because the Court erroneously "adopt[ed] the government's assumptions" about the basis for the jury's verdict while "criticiz[ing] . . . the assumptions made by Newman" about the same [Doc. 990 p. 9]. The Court disagrees with this characterization of its opinion. In the opinion [Doc. 951], the Court acknowledged that various assumptions about the jury's reasoning, including those discussed by both parties, could possibly be drawn from the verdict, but it did not endorse or adopt any assumption. Rather, the Court noted the various and divergent assumptions that could possibly be made about the verdict to illustrate this point: "[I]nconsistent verdicts . . . should not necessarily be interpreted as a windfall to the Government at the defendant's expense" because "[i]t is equally possible that the jury, convinced of guilt, properly reached its conclusion on [one] offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on [a different] offense." *United States v. Powell*, 469 U.S. 57, 65 (1984). In

7

other words, the Court did not reject defendants' assumption about the verdict because it favored those discussed by the government; it found that defendants' assumption was not the only one that could logically be drawn [Doc. 951 p. 11 (concluding that "defendants' construction of the reasoning underlying the verdicts in Counts Two, Four, Fourteen, Sixteen, and Eighteen—and thus their conclusion that those verdicts are inconsistent with the verdicts in Counts Eleven and Thirteen—is not logically compelled but speculative")] and that speculation about the jury's verdict could ultimately favor either party [*Id.* at 10–11 ("Although it is possible, as defendants argue, that the jury found defendants did not write prescriptions illegally as a general matter and so they did not do so on the occasions specified in Counts Twelve, Fourteen, and Eighteen, it is also possible that the jury decided the government had not established beyond a reasonable doubt that the charged practitioners prescribed illegally on November 14, 2013, to Anna Vann-Keathley, on February 10, 2014, to Sandra Boling, and on September 8, 2014, to Henry Reus, *id.* at 95–97, or as the government speculates [Doc. 891 p. 4], the jury might have acquitted defendants on these counts because they did not find the death enhancements applied, or the jury might have decided to exercise lenity toward the nurse practitioner defendants on the drug distribution counts.")].

Next, defendant Newman argues that the sufficiency of the government's evidence as to "the maintained element" of a 21 U.S.C. § 856(a)(1) violation is a substantial appellate

8

issue.[3]  To support a conviction under § 856(a)(1), the government must show that the defendant "knowingly open[ed], lease[d], rent[ed], use[d], or maintain[ed] any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance."  21 U.S.C. § 856(a)(1).

---

[3] This specific issue has not been thoroughly litigated before this Court.  To be sure, defendants did make oral Rule 29 motions at the close of the government's case-in-chief [Doc. 928 p. 135–41] and renewed those motions after the close of all the evidence [Doc. 896 p. 171–73].  Defendant also jointly filed a post-trial Rule 29 motion [Doc. 870].  In their initial, oral motions, defendants' arguments focused on the sufficiency of the government's evidence with respect to (1) conspiratorial agreement and intent, (2) the enhanced penalties for overdose deaths, and (3) the legality of the prescriptions at issue (i.e., whether controlled substances had been prescribed outside the usual course of professional practice and not for a legitimate medical purpose) [*see* Doc. 928 p. 135–41; *see also* Doc. 885 p. 228–36].  And in their subsequent, post-verdict motion under Rule 29, defendants argued that the verdict was so inconsistent as to indicate arbitrariness or irrationality [Doc. 870 p. 5–10, 15].  However, in none of these motions did defendants specifically address the sufficiency-of-the-evidence issue that defendant Newman intends to raise on appeal: the sufficiency of the evidence with respect to "the maintained element" of a § 856(a)(1) violation.

A Rule 29 motion is "not required by the rules to be in writing or to specify the grounds therefor," *United States v. Cox*, 593 F.2d 46, 48 (6th Cir. 1979), so "an abbreviated Rule 29 motion which is general in nature may not amount to a waiver."  *United States v. Bucheit*, 134 F. App'x 842, 859 (6th Cir. 2002) (citing *United States v. Chance*, 306 F.3d 356, 369 (6th Cir. 2002)).  However, the Sixth Circuit has held that "where the defendant makes a Rule 29 motion on specific grounds, all grounds not specified in the motion are waived."  *Chance*, 306 F.3d at 369 (citing *United States v. Dandy*, 998 F.2d 1344, 1356–57 (6th Cir. 1993)); *see also United States v. Porter*, 886 F.3d 562, 566 (6th Cir. 2018).

Here, because defendants did not mention or discuss the evidence with respect to either the § 856(a)(1) charge or "the maintained element" of that charge, and instead focused their Rule 29 motions on other elements of other charges, this argument could be deemed waived on appeal.  *See Porter*, 886 F.3d at 566 (finding a Rule 29 issue waived on appeal where the defendant's Rule 29 motion before the district court was limited to a single, different issue).  The possibility of waiver suggests that this issue may not even be a viable appellate issue, let alone a substantial one.

But even if defendants did not waive this argument, which is plausible given some general, conclusory arguments in the initial Rule 29 motions [*see* Doc. 928 p. 137], *see Chance*, 306 F.3d at 371 (concluding that, although the defendant's Rule 29 motion "centered around specific areas of evidence," the defendant's argument on appeal was not waived because his initial motion was "general in nature"), as the Court will explain, defendant Newman's anticipated challenge to the sufficiency of the government's evidence with respect to the "maintained" element does not present a substantial appellate issue on the merits either.

9

Defendant cites to *United States v. Lang* in support of her argument that she did not "maintain" the Lovell Road clinic. 717 F. App'x 523, 545 (6th Cir. 2017). But in *Lang*, a panel of the Sixth Circuit rejected an argument by the defendant, Lang, similar to the argument made here. 717 F. App'x at 545. The evidence established that Lang was the operator of an illicit pain clinic, who worked at the clinic regularly, obtained a business license for the clinic, was active in paying clinic expenses, and was engaged in the management of the clinic "up to and including 'seeing patients.'" *Id.* This conduct, the panel concluded, was "more than enough to allow a rational jury to find that Lang helped maintain [the clinic]." *Id.* (noting that "ownership or primary responsibility for a premises" is not required to satisfy the maintained element (citing *United States v. Russell*, 595 F.3d 633, 644 (6th Cir. 2010)).

Here, similar to *Lang*, the clinic at issue was defendant's place of business. She worked there regularly, seeing numerous clinic patients, and her role was integral to the clinic's operation and the commission of controlled substances offenses at that location. However, defendant Newman, as a contracted nurse practitioner at the Lovell Road clinic, did not carry out acts of maintenance similar to those that stemmed from Lang's managerial role at her clinic, such as paying clinic expenses and securing necessary licensure. Defendant emphasizes this point in her motion citing a proposition in *Lang* that has its roots in *United States v. Russell*, which counsels that "[a]cts that evidence 'maintenance' are 'such matters as control, duration, acquisition of the site, renting or furnishing the site, repairing the site, supervising, protecting supplying food of those at the site, and

10

continuity.'" 595 F.3d at 644; *cf. United States v. Alkufi*, 636 F. App'x 323, 338 (6th Cir. 2016) (counseling that "[a] variety of factual scenarios" may amount to 'maintaining' a drug house under § 856(a)(1)" and that "[w]hether a defendant has 'maintained' a place is necessarily a fact-intensive issue that must be resolved on a case-by-case basis"). She argues that none of the acts of maintenance specifically noted in *Russell* describe her conduct. The Court in large part agrees, but given the similarities to *Lang*, the Court is unconvinced that the evidence in this case is insufficient to show that defendants "maintained" the Lovell Road clinic.[4]

But even assuming the evidence was insufficient to establish *maintenance*, such a finding would not compel a conclusion that defendant's conviction is insufficiently supported by the evidence, because, as defendant seemingly concedes [Doc. 990 p. 11 ("At best, she used the location . . . .")], the evidence, viewed in accordance with the Rule 29 standard, is sufficient to establish that defendants did "knowingly . . . *use* [the Lovell Road clinic] for the purpose of manufacturing, distributing, or using any controlled substance." § 856(a)(1) (criminalizing opening, leasing, renting, using, *or* maintaining a drug-involved premises); *see also United States v. Facen*, 812 F.3d 280, 289 (2d Cir. 2016) ("Because the statute uses the disjunctive conjunction 'or' between the listed alternative ways of violating

---

[4] Additionally, the Court notes that defendants were also charged as aiders and abettors [*see* Doc. 320 p. 62, 63–64; Doc. 860 p. 8–10]. So even assuming the evidence of "maintenance" was insufficient to establish that defendants were principally liable for an § 856(a)(1) violation, 18 U.S.C. § 2 provides that aiders and abettors are punishable as principals, and the evidence of defendants' role and conduct at the clinics at issue is sufficient, for purposes of Rule 29, to establish aider and abettor liability.

11

the statute, § 856(a)(1) is violated simply by *using* a place for the commission of the specified drug crimes; proof that the defendant 'maintain[ed]' the premises, which is a separate way of violating the statute, is not necessary for a conviction."). In particular, for Rule 29 purposes, the evidence establishes that defendants saw thousands of patients of the Lovell Road clinic (Government's Exhibit 918) and wrote thousands of prescriptions for high-dose opioids there (Government's Exhibit 954, 959, 966, 971). Viewed in the light most favorable to the government, the evidence also establishes that the Lovell Road clinic was the setting for defendants' prescribing for high-dose opioids, and increasing patients' morphine equivalent dose ("MED") upon request, despite aberrant drug screens, minimal or no pathological findings on MRIs, the relatively young age of a patient, instructions from the medical director to the contrary, and/or indications that patients were at a high risk for opioid abuse, addiction, or diversion [*see, e.g.*, Doc. 923 p. 100, 123–25; Doc. 924 p. 165–66; Doc. 922 p. 205–06; Doc. 925 p. 53, 81, 109, 112–13; Doc. 939 p. 199, 217, 228, 241–42, 245–48, 281–85; Doc. 941 p. 5–8, 30, 80–84, 90–92, 100–01, 105–07, 139, 144–45, 175–76; Doc. 943 p. 259–61]. Moreover, looking at the evidence in accordance with Rule 29, it shows that this particular premises was, to some extent, ornamented with accoutrements of a legitimate medical practice, which aided the commission of controlled substances offenses there [*see* Doc. 917 p. 29, 32, 79–81, 150–51; Doc. 920 p. 154–55; Doc. 904 p. 222–28]. Thus, the evidence is sufficient for a rational jury to find that defendants *used* the Lovell Road clinic for the purpose of committing controlled substance offenses. And the Court does not find, given the government's substantial and compelling

evidence as to this element, that such a conclusion is "fairly doubtful." *Miller*, 753 F.2d at 23.

Lastly, the Court turns to the potential appellate issue arising out of comments by the government during closing arguments that defendants interpret as relating to their exercising their constitutional right not to testify at trial [Doc. 997 p. 2; *see also* Doc. 870 p. 14]. At the outset, the Court notes that it has twice addressed the propriety of comments by the government during closing arguments: first, in its oral ruling denying defendants' motion to declare a mistrial [Doc. 886 p. 22–26], and second, in its written opinion denying defendants' motion for judgment of acquittal or a new trial [Doc. 951 p. 49–57]. In each instance, the Court relied on controlling Sixth Circuit precedent, including *United States v. Robinson*, 651 F.2d 1188, 1197 (6th Cir. 1981), *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001), *United States v. Wimbley*, 553 F.3d 455, 461 (6th Cir. 2009), and *United States v. Wells*, 623 F.3d 332, 338 (6th Cir. 2010) [*see id.*; Doc. 886 p. 22–26], and defendants did not present any authority supportive of a finding that the government's statements were improper or so flagrant as to warrant reversal [*see* Doc. 951 p. 51]. For these reasons, the Court does not find that an appellate issue related to statements by the government in closing would "present[] a close question or one that could go either way [or] that the question is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *Pollard*, 778 F.2d at 1182.

13

In sum, none of the potential appellate issues defendants mention in their motions involve substantial questions of law or fact. *See* 18 U.S.C. § 3143(b)(1)(B). For this reason, defendants may not be ordered released pending appeal, and the Court need not address whether exceptional reasons render defendant's detention inappropriate, *see* § 3145(c), or whether defendants are likely to flee or pose a danger to the safety of any other person or the community if released on conditions.[5] *See* § 3143(b)(1)(A). Defendants' motions [Docs. 990, 997, 1010] are accordingly **DENIED in part**.

B.     **Release Pending Designation and the Opportunity to Self-Report**

In her written motion, defendant Newman requests that she be allowed sixty (60) days or until after January 1, 2021, to self-report [Doc. 990 p. 1, 11–12]. In support, she notes that she suffers from "health issues," including asthma and hypertension, and states that reporting directly to the Bureau of Prisons, instead of awaiting designation detained in a local jail, will "permit her to continue taking her prescribed medication without the risk that a local jail—likely already dealing with COVID infections—would ignore or neglect the medication she needs" and will "permit the BOP to find the proper facility for her care and make certain that when she self-reports she will continue to be treated for her conditions" [*Id.* at 12]. Defendant Clemons, too, requests the opportunity to self-report upon designation [Doc. 997 p. 3] and notes that the government does not oppose the defendants' requests in this regard [Doc. 992].[6] Defendant Womack also requests, in her

---

[5] *See supra*, note 2.
[6] *See supra*, note 1.

14

written motion, that she be allowed to self-report "on a later date" that would allow her to attend to her health, including completing some necessary dental work for stress fractures in her teeth and diagnostic testing for numbness in her hand [Doc. 1010 p. 3; *see also id.* at 2]. The defendants further clarified their requested timelines for self-reporting at their respective sentencing hearings, to which the government did not object.

A court may permit a defendant to self-surrender for service of a custodial sentence. *See* 18 U.S.C. § 3146(a)(2) (providing for punishments for failure to surrender for service of a sentence); *see also* 18 U.S.C. § 3141(b) (providing that a court may order a person released "pending imposition or execution of sentence"). The decision to grant a defendant the privilege of self-reporting is discretionary. *See United States v. Rainey*, 480 F. App'x 842, 845 (6th Cir. 2012) (describing self-surrender as a "discretionary benefit[]" bestowed by the district court).

During their time on pretrial and pre-sentencing release, defendants have demonstrated an ability to comply with the law and a disposition to respect this Court's orders. Moreover, as the government acknowledges, the COVID-19 pandemic has disrupted the Bureau of Prisons' normal operations such that permitting low-risk defendants such as these to self-report "would seem to maximize flexibility under the present conditions" to the BOP as well as to defendants [Doc. 992 p. 2]. Accordingly, the Court will **GRANT in part** defendants' motions [Docs. 990, 997, 1010] in that defendants may self-report to the institution designated by the Bureau of Prisons as set forth below.

15

### III. Conclusion

For the reasons discussed herein, defendants' motions are **DENIED in part** and **GRANTED in part** [Docs. 990, 997, 1010]. Defendants are not entitled to release pending appeal. But defendants are permitted to remain on release pending designation. Specifically, and as stated at defendants' respective sentencing hearings, defendants are **ORDERED** to report to the institution designated by the Bureau of Prisons as follows:

- Defendant Newman shall surrender for service of sentence at the institution designated by the Bureau of Prisons **on or after February 20, 2020**.

- Defendant Clemons shall surrender for service of sentence at the institution designated by the Bureau of Prisons **no earlier than sixty (60) days from entry of judgment**.

- Defendant Womack shall surrender for service of sentence at the institution designated by the Bureau of Prisons **on or after March 1, 2020**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE